**Rosen, Tsionis & Pizzo, PLLC**
38 New Street
Huntington, New York 11743
(631) 423-8527
Alex E. Tsionis, Esq.

*Attorneys for Lori Lapin Jones, Plaintiff-Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:                                                          Chapter 7

EMPIRE STATE GRAND COUNCIL ANCIENT          Case No.: 25-45914-ess
AND ACCEPTED SCOTTISH RITE MASONS INC.,

                                                Debtor.
-----------------------------------------------------------------X
LORI LAPIN JONES, solely as                      Adv. Pro. No.: 26-_____-ess
Chapter 7 Trustee of the Estate of
EMPIRE STATE GRAND COUNCIL ANCIENT
AND ACCEPTED SCOTTISH RITE MASONS INC.,

                                                Plaintiff,

        -against-

BROOKLYN MASONIC TEMPLE LLC
and R4 RE LLC,

                                                Defendants.
-----------------------------------------------------------------X

## **COMPLAINT**

Lori Lapin Jones, solely as Chapter 7 Trustee (the "Plaintiff") of the Estate of Empire State

Grand Council Ancient and Accepted Scottish Rite Masons Inc. (the "Debtor"), by and through

her counsel, Rosen, Tsionis & Pizzo, PLLC, respectfully submits this complaint (the "Complaint")

against Brooklyn Masonic Temple LLC ("BMT") and R4 RE LLC ("R4RE" together with BMT,

the "Defendants"), and respectfully alleges as follows:

1

## NATURE OF THE ACTION

1.      This is a case in which the Debtor transferred its principal asset, the real property commonly known as 317 Clermont Avenue, Brooklyn, New York 11205 (Borough: Brooklyn; Block: 2105; Lot: 1) (the "Property"), to BMT on April 3, 2025, which date is within one (1) year of the Debtor's bankruptcy filing (the "Transfer"), for no consideration or less than reasonably equivalent value, while the Debtor was insolvent or was rendered insolvent as a result of the Transfer, and at a time when the Debtor was indebted to unsecured creditors. The Transfer was not an ordinary transaction, but rather a deliberate scheme to divest the Debtor of its principal and most valuable asset and to place that asset beyond the reach of its creditors.

2.      In fact, the deed transferring the Property to BMT was executed by Michael C. Bernard ("Bernard"), who, at all relevant times, served on the Debtor's board, was the board chair, and was the Debtor's President. Bernard, however, also held an ownership interest in BMT and acted on BMT's behalf in connection with the Transfer. On the very same day as the Transfer, Bernard executed two (2) mortgages on behalf of BMT, in his capacity as a "Member," in favor of R4RE, encumbering the Property in the total amount of $5,000,000.00.[1] Despite Bernard's insider dealings regarding the Debtor's Transfer of the Property, and the fact that the deed transferring the Property to BMT was a no-consideration deed, R4RE accepted and recorded two (2) mortgages against the Property.

3.      Accordingly, the Plaintiff seeks, among other relief, to: (a) avoid and recover the Transfer as both an actual and constructive fraudulent conveyance; (b) avoid and recover the mediate transfer of the alleged security interests granted in favor of R4RE to the extent of the Debtor's equity in the Property at the time of the Transfer; (c) declare that the mortgages in favor

---

[1] The Plaintiff reserves all rights against Bernard.

of R4RE are unenforceable as against the estate's interest in the Property as of the date of the Transfer, except to the extent that the proceeds from R4RE's mortgages were used to satisfy certain, but not all, valid existing debts of the Debtor; and (d) preserve all avoided transfers and liens for the benefit of the Debtor's estate.

## JURISDICTION AND VENUE

4.      This adversary proceeding relates to the above-captioned bankruptcy case pending in the United States Bankruptcy Court for the Eastern District of New York.

5.      This adversary proceeding is a "core proceeding" under 28 U.S.C. §§ 157(b)(2)(A), (H), and (O) and 1334, and Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

6.      The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334.

7.      This Court is the proper venue for this adversary proceeding in accordance with 28 U.S.C. § 1409(a).

8.      The statutory predicates for the relief sought herein include Sections 105, 323, 541, 544, 548, 550, and 551 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 6009 and 7001 of the Bankruptcy Rules, Section 2201 of Title 28 of the United States Code, Sections 273, 274, 276 and 276-a of the New York Debtor and Creditor law – Uniform Voidable Transactions Act (the "DCL"), New York common law and any common law, rule, regulation and/or any applicable law of any other jurisdiction in which assets that are property of the estate currently unknown to the Plaintiff are located.

9.      Pursuant to Bankruptcy Rule 7008, the Plaintiff consents to the entry of final orders and judgments by the Court presiding over this adversary proceeding if it is determined that the

Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## THE PARTIES

10.     The Plaintiff is the Chapter 7 trustee of the Debtor. The Plaintiff has a mailing address of 98 Cutter Mill Road, Suite 255 South, Great Neck, New York 11021.

11.     According to the records maintained online by the New York State Department of State, Division of Corporations, BMT is a domestic limited liability company formed and existing under the laws of the State of New York. Public records reflect that the address for service of process for BMT is: 317 Clermont Ave, Brooklyn, New York 11205.

12.     According to the records maintained online by the New York State Department of State, Division of Corporations, R4RE is a domestic limited liability company formed and existing under the laws of the State of New York. Public records reflect that the address for service of process for R4RE is: 10 Monroe Boulevard, Apartment 5E, Long Beach, New York 11561.

## ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF

### I.     The Bankruptcy Filing and the Appointment of the Plaintiff

13.     On December 10, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. *See* Bankr. ECF No. 1.[2]

14.     The Debtor's bankruptcy petition, schedules, and related statements were executed by Bernard as "Manager", under penalty of perjury.

15.     On December 10, 2025, the United States Trustee for Region 2 appointed Lori Lapin Jones as interim Chapter 7 trustee. *See* Bankr. ECF No. 2. Following a duly convened

---

[2] Unless otherwise stated, court filings cited herein refer to the Chapter 7 bankruptcy, *In re Empire State Grand Council Ancient and Accepted Scottish Rite Masons Inc.*, Case No. 25-45914-ess, and citations to docket entries are cited as "[Bankr. ECF No. ___]".

4

meeting of creditors pursuant to Section 341(a) of the Bankruptcy Code, Lori Lapin Jones became the permanent Chapter 7 trustee for the Debtor's bankruptcy estate.

## II.  Insolvency of the Debtor

16.  Upon information and belief, the Debtor was insolvent as of the date of the Transfer and/or became insolvent as a result of the Transfer.

17.  Upon information and belief, as of the date of the Transfer or as a result of the Transfer, the fair value of the Debtor's liabilities exceeded the fair value of its assets.

18.  Upon information and belief, on the date of the Transfer or as a result of the Transfer, the Debtor was unable to pay its debts as they became due.

19.  According to the Debtor's Schedule A/B [Bankr. ECF No. 8], the Debtor listed assets totaling $6,294.91.

20.  According to the Debtor's Schedule D [Bankr. ECF No. 9], the Debtor did not list any creditors holding secured claims.

21.  According to the Debtor's Schedule E/F [Bankr. ECF No. 10], the Debtor listed a non-priority unsecured claim in favor of Candace Ballard ("Ballard") in the amount of $7,721,400.00, which the Debtor marked as disputed (the "Ballard Claim").

22.  The Debtor's bankruptcy schedules were executed by Bernard under penalty of perjury.

23.  Based on the Debtor's bankruptcy schedules, as of the Petition Date, the Debtor listed total liabilities of $7,721,400.00 and total assets of $6,294.91.

24.  Based on the amounts set forth in the Debtor's bankruptcy schedules, the Debtor reported a deficit of $7,715,105.09 as of the Petition Date.

25.  The Property constituted substantially all of the Debtor's assets.

5

26.     As a result of the Transfer, the Debtor was left with unreasonably small capital and without the ability to satisfy the claims of its creditors.

27.     According to the Debtor's Statement of Financial Affairs [Bankr. ECF No. 13] ("SOFA"), the Debtor did not disclose the Transfer. *See* SOFA.

28.     In response to Question 13 of the SOFA, the Debtor, through Bernard, listed under penalty of perjury, that, within the two (2) years prior to the Petition Date, neither the Debtor nor any person acting on its behalf sold, traded, or otherwise transferred any property to any party, except for transfers made in the ordinary course of the Debtor's business or financial affairs. *See* SOFA, Q. 13.

29.     The Transfer occurred within the two-year period referenced in the SOFA.

30.     As a result of the Transfer, the Debtor no longer held its principal asset, the Property, and retained only the assets listed in its bankruptcy schedules.

III.    **The Predicate Creditor**

31.     As of the date of the Transfer, the Debtor had unsecured creditors and/or creditors whose claims existed at the time of the Transfer.

32.     According to the Debtor's Schedule E/F [Bankr. ECF No. 10], the Debtor listed Ballard as having a non-priority unsecured claim in the amount of $7,721,400.00, and checked the box that the Ballard Claim is "Disputed."

33.     The Debtor further listed on its Schedule E/F that the Ballard Claim was incurred on December 22, 2022, which predates the Transfer.

34.     Accordingly, by the Debtor's own admission, the Debtor had an unsecured creditor as of the date of the Transfer.

6

35.  Additionally, at the time of the Transfer, the Debtor was also indebted to Harvey Grajales ("Grajales") and/or Grajales held a claim against the Debtor.

36.  In or around 2012, Grajales commenced an action styled *Harvey Grajales v. Empire State Grand Council Ancient and Accepted Scottish Rite Masons Inc.*, in the Supreme Court of the State of New York, County of Kings (the "State Court"), bearing Index Number 19041/2012, seeking damages against the Debtor for, among other things, negligence (the "Grajales Action").

37.  On or about November 7, 2019, prior to the date of the Transfer, the State Court entered a default judgment on liability in favor of Grajales and against the Debtor.

38.  On or about June 9, 2025, after the date of the Transfer and following an inquest on damages, the State Court entered a money judgment for damages in the amount of $5,199,724.50 in favor of Grajales and against the Debtor.

39.  On March 26, 2026, Grajales filed a proof of claim in the Debtor's underlying bankruptcy case docketed as Claim Number 1 on the Court's Claims Register in the unsecured amount of $5,200,000.00 on account of "Default Judgment, Liens and Final Personal Injury Judgment." *See* Claim No. 1 filed in the Debtor's underlying bankruptcy case.

40.  The Debtor failed to list Grajales as a creditor in its bankruptcy schedules.

41.  Shawn Fulcher ("Fulcher") also held a claim against the Debtor at the time of the Transfer.

42.  On June 9, 2017, Fulcher commenced an action styled *Shawn Fulcher against Empire State Grand Council Ancient and Accepted Scottish Rite Masons Inc.*, in the Supreme Court of the State of New York, County of Kings, bearing Index Number 511435/2017, seeking damages against the Debtor for, among other things, personal injuries (the "Fulcher Action").

7

43. According to the New York State Courts Electronic Filing System, it appears that the Fulcher Action was pending and was awaiting assignment for jury selection.

44. However, on April 16, 2026, T. Edward Williams, Esq., the Debtor's bankruptcy counsel, filed a *Notice of Suggestion of Bankruptcy* in the Fulcher Action notifying the State Court and the parties in the Fulcher Action of, among other things, the Debtor's underlying bankruptcy filing.

45. On April 16, 2026, Fulcher filed a proof of claim in the Debtor's underlying bankruptcy case docketed as Claim Number 2 on the Court's Claims Register in the unsecured amount of $1,000,000.00 on account of "Personal injury." *See* Claim No. 2 filed in the Debtor's underlying bankruptcy case.

46. The Debtor failed to list Fulcher as a creditor in its bankruptcy schedules.

47. The Debtor failed to list the Fulcher Action in its SOFA.

48. Accordingly, as of the date of the Transfer, the Debtor had one or more unsecured creditors holding claims allowable under Section 502 of the Bankruptcy Code.

**IV.    The Property and the Debtor's Transfer of the Property**

49. According to the records maintained online by the New York State Department of State, Division of Corporations, the Debtor is a domestic not-for-profit corporation formed and existing under the laws of the State of New York.

50. According to the records maintained online by the New York State Department of State, Division of Corporations, Bernard is listed as the individual to receive service of process on behalf of the Debtor.

51. At the Section 341(a) Meeting of Creditors held on January 13, 2026 (the "341 Meeting"), Bernard testified, among other things, that he is on the board of the Debtor, that he is the board chair, and that he is the President of the Debtor.

52. According to the Automated City Register Information System ("ACRIS") maintained online by the New York City Department of Finance, Office of the City Register, the Debtor acquired ownership of the Property by deed dated October 24, 1977, and recorded with the City of New York in Reel 956, Page 1758.

53. Based upon the land records maintained online on ACRIS, on April 3, 2025, the Debtor transferred the Property to BMT by deed dated April 3, 2025 (the "Transfer Deed"), and recorded on April 14, 2025, under CRFN 2025000099853.

54. The Transfer Deed is executed by Bernard on behalf of the Debtor.

55. The Transfer was made for no consideration or less than reasonably equivalent value.

## V. BMT Mortgages the Property

56. As part of the Debtor's and BMT's fraudulent scheme to insulate the Property and its equity from the Debtor's creditors, simultaneously with the Transfer of the Property, BMT executed two (2) mortgages in favor of R4RE that were consolidated into a single lien encumbering the Property in the amount of $5,000,000.00.

57. Upon information and belief, on or about April 3, 2025, the same date as the Transfer, BMT executed a promissory note in favor of R4RE in the amount of $2,925,000.00, which was secured by a mortgage on the Property dated April 3, 2025, and recorded on April 14, 2025, under Instrument Number 2025000099854 (the "First Post-Transfer Mortgage").

58.     Additionally, upon information and belief, on or about April 3, 2025, BMT entered into a certain *Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents and Security Interest* with R4RE (the "CEMA"), pursuant to which the First Post-Transfer Mortgage and certain prior mortgages encumbering the Property were consolidated into a single lien in the amount of $5,000,000.00 (the "Mortgage").

59.     The CEMA was recorded in the Office of the City Register, City of New York, on April 14, 2025, under Instrument Number 2025000099857.

60.     Upon information and belief, the proceeds of the Mortgage were used to satisfy certain, but not all, valid existing debts of the Debtor, with the remaining funds, if any, being diverted to BMT.

## VI.     R4RE's Notice of the Transfer Deed and Lack of Good Faith Status

61.     At the time R4RE extended credit and accepted the Mortgage against the Property, R4RE had actual knowledge, constructive knowledge, and/or inquiry notice that BMT's interest in the Property was derived from a transfer for no consideration or less than reasonably equivalent value.

62.     The Transfer Deed recites a stated consideration of only "$10.00."

63.     The RP-5217NYC form filed in connection with the Transfer Deed reflects that the "Full Sale Price" for the Property was $0.00.

64.     Based upon (i) the recorded Transfer Deed, (ii) the nominal consideration recited therein, and (iii) the $0.00 "Full Sale Price" reflected in the RP-5217NYC form, R4RE knew or should have known, or was on inquiry notice of facts indicating that the Transfer was a no-consideration transfer and avoidable as a fraudulent conveyance.

10

65.    R4RE knew, or should have known, that Bernard was involved in both sides of the Transfer and that the Transfer was not an arm's-length transaction.

66.    Bernard executed the Transfer Deed on behalf of the Debtor.

67.    Bernard also executed the Mortgage on behalf of BMT as a "Member," together with Jonnie Walker and Elmer Rothwell.

68.    This overlap of control and participation in both sides of the transaction constituted a badge of fraud and should have further heightened R4RE's duty of inquiry into the Transfer.

69.    The Transfer and the subsequent Mortgage were components of a scheme by the Debtor and BMT to hinder, delay, or defraud creditors by stripping the Debtor of its equity in the Property while simultaneously encumbering the Property with debt in favor of R4RE.

70.    Consequently, the Plaintiff may avoid and recover the mediate transfer to R4RE, including the Mortgage, to the extent of the Debtor's equity in the Property at the time of the Transfer.

## VII.    The Transfer was Made with Actual Intent to Hinder, Delay, or Defraud Creditors

71.    The Transfer was made by the Debtor to BMT with the actual intent to hinder, delay, or defraud the Debtor's present and future creditors.

72.    The Transfer was orchestrated by the Debtor, and/or Bernard, acting in his dual capacity as an officer and fiduciary of the Debtor and as a principal of BMT, for the purpose of removing the Property from the reach of known creditors of the Debtor, including Ballard, Grajales, and Fulcher.

73.    The Transfer was made for no consideration or less than reasonably equivalent value.

74.     The Transfer was made to an "insider"—BMT, whose principal is Bernard, who is also on the board of the Debtor, is the board chair, and the President of the Debtor.

75.     BMT was an "insider" of the Debtor within the meaning of Section 101(31) of the Bankruptcy Code because, upon information and belief, BMT was controlled, directly or indirectly, by Bernard.

76.     At the time of the Transfer, there was pending litigation against the Debtor, as the Grajales Action and the Fulcher Action were each pending in State Court.

77.     The Transfer of the Property consisted of substantially all the Debtor's assets.

78.     The Debtor was insolvent at the time of the Transfer or became insolvent as a result of the Transfer.

79.     The Transfer occurred approximately two months prior to the State Court in the Grajales Action entering a money judgment on damages in the amount of $5,199,724.50 in favor of Grajales and against the Debtor.

80.     The Debtor had creditors at the time of the Transfer, and/or at the time of the Transfer, the Debtor's creditors had claims against it.

81.     Consequently, the Plaintiff may avoid and recover the Transfer, or the value thereof, from BMT for the benefit of the Debtor's estate, as an actual fraudulent conveyance.

## VIII.   The Transfer is a Constructive Fraudulent Transfer

82.     The Transfer was made within the two-year look-back period under the Bankruptcy Code and the four-year look-back period under the DCL.

83.     The Transfer was made at a time when the Debtor was insolvent, or the Transfer rendered the Debtor insolvent.

84.    The Debtor did not receive reasonably equivalent value in exchange for the Transfer.

85.    At the time of the Transfer, the Debtor had unsecured creditors, including Ballard and/or Grajales, and/or at the time of the Transfer, the Debtor's creditors had claims against it.

86.    At the time of the Transfer, Fulcher held a claim against the Debtor.

87.    At the time of the Transfer, the Debtor was not paying its obligations as they became due.

88.    As of the date of the Transfer, there existed one or more unsecured creditors holding claims allowable under Section 502 of the Bankruptcy Code who could have avoided the Transfer under applicable law.

89.    Consequently, the Plaintiff may avoid and recover the Transfer, or the value thereof, from BMT for the benefit of the Debtor's estate, as a constructive fraudulent conveyance.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF AGAINST DEFENDANT BMT
(Avoidance and Recovery of Fraudulent Transfer
Under 11 U.S.C. §§ 544(b), 548(a)(1)(A), and 550)

90.    The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "89" as if set forth fully herein.

91.    The Debtor transferred the Property to BMT.

92.    The Property was property of the Debtor.

93.    The Transfer was made within two (2) years of the Petition Date.

94.    At the time of the Transfer, the Debtor had one or more creditors, and/or at the time of the Transfer, the Debtor's creditors had claims against it.

13

95.     The Transfer was made with the actual intent to hinder, delay, or defraud the Debtor's creditors or any one of them.

96.     The badges of fraud at or near the time of the Transfer include, but are not limited to: (i) the Transfer was made for no consideration or less than reasonably equivalent value; (ii) the Transfer was made to an "insider"—BMT, whose principal is Bernard, who is also on the board of the Debtor, is the board chair, and the President of the Debtor; (iii) at the time of the Transfer, there was pending litigation against the Debtor, as the Grajales Action and Fulcher Action were each pending in State Court; (iv) the Transfer constituted substantially all the Debtor's assets; (v) the Debtor was insolvent at the time of the Transfer or rendered insolvent as a result of the Transfer; (vi) the timing of the Transfer was such that the Transfer occurred approximately two months prior to the State Court entering a judgment on damages in the amount of $5,199,724.50 in favor of Grajales, and against the Debtor; and (vii) at the time of the Transfer, the Debtor had one or more creditors, and/or at the time of the Transfer, the Debtor's creditors had claims against it.

97.     As a result of the above, the Transfer constitutes a fraudulent transfer under Section 548(a)(1)(A) of the Bankruptcy Code.

98.     By reason of the foregoing, the Plaintiff is entitled to an order avoiding and recovering the Transfer, or the value thereof, pursuant to Sections 544(b), 548(a)(1)(A), and 550 of the Bankruptcy Code, and a judgment against BMT in an amount as yet undetermined, but not less than the value of the Debtor's interest transferred, plus interest thereon, or such other amount as may be determined by the Court.

**SECOND CLAIM FOR RELIEF AGAINST DEFENDANT BMT**
**(Avoidance and Recovery of Fraudulent Transfer**
**Under 11 U.S.C. §§ 544(b), 548(a)(1)(B), and 550)**

99.     The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "89" as if set forth fully herein.

100.    The Debtor transferred the Property to BMT.

101.    The Property was property of the Debtor.

102.    The Transfer was made within two (2) years of the Petition Date.

103.    The Debtor received less than reasonably equivalent value in exchange for the Transfer.

104.    The Debtor: (a) was insolvent on the date of the Transfer or was rendered insolvent as a result of the Transfer; (b) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with it was an unreasonably small capital; or (c) intended to incur or believed that it would incur debts beyond its ability to pay as they matured.

105.    The Transfer constitutes a fraudulent transfer under Section 548(a)(1)(B) of the Bankruptcy Code.

106.    By reason of the foregoing, the Plaintiff is entitled to an order avoiding and recovering the Transfer, or the value thereof, pursuant to Sections 544(b), 548(a)(1)(B), and 550 of the Bankruptcy Code, and a judgment against BMT in an amount as yet undetermined, but not less than the value of the Debtor's interest transferred, plus interest thereon, or such other amount as may be determined by the Court.

15

**THIRD CLAIM FOR RELIEF AGAINST DEFENDANT BMT**
**(Avoidance and Recovery of Fraudulent Transfer**
**Under 11 U.S.C. §§ 544(b) and 550, and §§ 273(a)(1) and 276 of the DCL)**

107.    The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "89" as if set forth fully herein.

108.    The Debtor transferred the Property to BMT.

109.    The Property was property of the Debtor.

110.    The Transfer was made within four (4) years of the Petition Date.

111.    At the time of the Transfer, the Debtor had one or more creditors, and/or at the time of the Transfer, the Debtor's creditors had claims against it.

112.    The Transfer was made with the actual intent to hinder, delay, or defraud the Debtor's creditors or any one of them.

113.    The badges of fraud at or near the time of the Transfer include, but are not limited to: (i) the Transfer was made for no consideration or less than reasonably equivalent value; (ii) the Transfer was made to an "insider"—BMT, whose principal is Bernard, who is also on the board of the Debtor, is the board chair, and the President of the Debtor; (iii) at the time of the Transfer, there was pending litigation against the Debtor, as the Grajales Action and Fulcher Action were each pending in State Court; (iv) the Transfer constituted substantially all the Debtor's assets; (v) the Debtor was insolvent at the time of the Transfer or rendered insolvent as a result of the Transfer; (vi) the timing of the Transfer was such that the Transfer occurred approximately two months prior to the State Court entering a judgment on damages in the amount of $5,199,724.50 in favor of Grajales, and against the Debtor; and (vii) at the time of the Transfer, the Debtor had one or more creditors, and/or at the time of the Transfer, the Debtor's creditors had claims against it.

114.    As a result of the above, the Transfer constitutes a fraudulent transfer in violation of Section 273(a)(1) of the DCL.

115.    Accordingly, under Sections 544(b) and 550 of the Bankruptcy Code, and Sections 273(a)(1) and 276 of the DCL, the Plaintiff may avoid and recover the Transfer.

116.    By reason of the foregoing, the Plaintiff is entitled to an order avoiding and recovering the Transfer, or the value thereof, pursuant to Sections 544(b) and 550 of the Bankruptcy Code, and Sections 273(a)(1) and 276 of the DCL, and a judgment against BMT in an amount as yet undetermined, but not less than the value of the Debtor's interest transferred, plus interest thereon, or such other amount as may be determined by the Court.

### FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT BMT
#### (Avoidance and Recovery of Fraudulent Transfer
#### Under 11 U.S.C. §§ 544(b) and 550, and §§ 273(a)(2) and 276 of the DCL)

117.    The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "89" as if set forth fully herein.

118.    The Debtor transferred the Property to BMT.

119.    The Property was property of the Debtor.

120.    The Transfer was made within four (4) years of the Petition Date.

121.    At the time of the Transfer, the Debtor had one or more creditors, and/or at the time of the Transfer, the Debtor's creditors had claims against it.

122.    The Debtor did not receive reasonably equivalent value in exchange for the Transfer, and the Debtor: (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or (ii) intended to incur, or believed or reasonably should have believed that the Debtor would incur, debts beyond the Debtor's ability to pay as they became due.

17

123.    As a result of the above, the Transfer constitutes a fraudulent transfer in violation of Section 273(a)(2) of the DCL.

124.    Accordingly, under Sections 544(b) and 550 of the Bankruptcy Code, and Sections 273(a)(2) and 276 of the DCL, the Plaintiff may avoid and recover the Transfer.

125.    By reason of the foregoing, the Plaintiff is entitled to an order avoiding and recovering the Transfer, or the value thereof, pursuant to Sections 544(b) and 550 of the Bankruptcy Code, and Sections 273(a)(2) and 276 of the DCL, and a judgment against BMT in an amount as yet undetermined, but not less than the value of the Debtor's interest transferred, plus interest thereon, or such other amount as may be determined by the Court.

### FIFTH CLAIM FOR RELIEF AGAINST DEFENDANT BMT
### (Avoidance and Recovery of Fraudulent Transfer
### Under 11 U.S.C. §§ 544(b) and 550, and §§ 274(a) and 276 of the DCL)

126.    The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "89" as if set forth fully herein.

127.    The Debtor transferred the Property to BMT.

128.    The Property was property of the Debtor.

129.    The Transfer was made within four (4) years of the Petition Date.

130.    At the time of the Transfer, the Debtor had one or more creditors, and/or at the time of the Transfer, the Debtor's creditors had claims against it.

131.    The Debtor received less than reasonably equivalent value in exchange for the Transfer.

132.    The Debtor was insolvent at the time of the Transfer or the Debtor became insolvent as a result of the Transfer.

18

133.    As a result of the above, the Transfer constitutes a fraudulent transfer in violation of Section 274(a) of the DCL.

134.    Accordingly, under Sections 544(b) and 550 of the Bankruptcy Code, and Sections 274(a) and 276 of the DCL, the Plaintiff may avoid and recover the Transfer.

135.    By reason of the foregoing, the Plaintiff is entitled to an order avoiding and recovering the Transfer, or the value thereof, pursuant to Sections 544(b) and 550 of the Bankruptcy Code, and Sections 274(a) and 276 of the DCL, and a judgment against BMT in an amount as yet undetermined, but not less than the value of the Debtor's interest transferred, plus interest thereon, or such other amount as may be determined by the Court.

**SIXTH CLAIM FOR RELIEF AGAINST DEFENDANT BMT**
**(Recovery of Reasonable Attorney's Fees and Costs Under § 276-a of the DCL)**

136.    The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "89" and "107" through "135" as if set forth fully herein.

137.    Pursuant to Section 276-a of the DCL, in an action where a bankruptcy trustee successfully obtains a judgment avoiding any transfer or obligation by a debtor under the DCL, the Court shall fix the reasonable attorney's fees of the bankruptcy trustee, who shall have judgment therefor against the debtor and the transferees who are defendants in addition to the other relief granted by the judgment.

138.    As alleged above, the Transfer constitutes a fraudulent transfer of the Debtor's assets in violation of Sections 273(a)(1), 273(a)(2), 274(a), and 276 of the DCL.

139.    Consequently, upon obtaining judgment on such grounds, the Plaintiff is entitled to a judgment against BMT for her reasonable attorney's fees and costs in an amount to be determined.

19

### SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANT R4RE
### (Avoidance of Mediate Transfer to R4RE Under
### <u>11 U.S.C. §§ 544(b), 548(a)(1)(B) and 550)</u>

140.    The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "89" as if set forth fully herein.

141.    On April 3, 2025, the Debtor transferred the Property to BMT for no consideration or less than reasonably equivalent value (the "<u>Transfer</u>" as defined above), which Transfer is avoidable as an actual and constructive fraudulent transfer pursuant to Sections 548(a)(1)(A) and 548(a)(1)(B) of the Bankruptcy Code and/or applicable state law.

142.    Following the Transfer, and as a direct consequence thereof, BMT granted the Mortgage in favor of R4RE, thereby effecting a mediate transfer of an interest in the Property within the meaning of Sections 101(54) and 550(a) of the Bankruptcy Code.

143.    The Mortgage constitutes value derived from and traceable to the Transfer, and would not have occurred but for BMT's wrongful acquisition of the Debtor's interest in the Property.

144.    R4RE is a mediate transferee of the Transfer within the meaning of Section 550(a)(2) of the Bankruptcy Code.

145.    At the time R4RE extended credit and accepted the Mortgage, R4RE was on actual and/or inquiry notice or knew or should have known that BMT's ownership interest in the Property was derived from a transfer for less than reasonably equivalent value, as evidenced by, among other things: (a) the Transfer Deed; (b) the nominal consideration recited therein; and (c) $0.00 "Full Sale Price" reflected in the RP-5217NYC form.

146.    Such facts imposed upon R4RE a duty to conduct a reasonable investigation, including, but not limited to, an inquiry into: (a) the Debtor's solvency at the time of and as a result

20

of the Transfer; (b) whether consideration or reasonably equivalent value was exchanged; and (c) whether the Transfer was made to hinder, delay, or defraud creditors.

147.    Upon information and belief, R4RE failed to conduct any such reasonable inquiry, and therefore is charged with knowledge of all facts that such an investigation would have disclosed.

148.    Upon information and belief, R4RE knew, or reasonably should have known, that the Transfer was not conducted at arm's length because the Transfer Deed was for no consideration or less than reasonably equivalent value, and Bernard executed the Transfer Deed on behalf of the Debtor while simultaneously executing the Mortgage on behalf of BMT as a "Member," together with Jonnie Walker and Elmer Rothwell.

149.    Based on, among other things, such notice, R4RE did not take the Mortgage in good faith.

150.    Pursuant to Section 550(a) of the Bankruptcy Code, the Plaintiff is entitled to recover, for the benefit of the estate, the property transferred or the value thereof from R4RE as a mediate transferee of the Transfer.

151.    The Debtor's equity in the Property at the time of the Transfer was wrongfully converted into the Mortgage that allegedly encumbers the Property.

152.    By reason of the foregoing, the Plaintiff is entitled to: (a) avoid the mediate transfer represented by the Mortgage to the extent it encumbers the Debtor's equity in the Property as of the date of the Transfer; (b) preserve such avoided lien for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code; and/or (c) recover from R4RE the value of the Debtor's equity so encumbered, pursuant to Section 550(a) of the Bankruptcy Code, plus interest thereon, attorneys' fees and costs, or such other amount as may be determined by the Court.

21

**EIGHTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**
**(Declaratory Relief – Mortgage Unenforceable as to Estate's Interest**
**Under 11 U.S.C. §§ 541, 544, 548, 550; 28 U.S.C. § 2201)**

153.    The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "152" as if set forth fully herein.

154.    The Transfer is avoidable and, upon avoidance, is deemed never to have occurred.

155.    As a result, the Debtor's interest in the Property remained property of the bankruptcy estate at all relevant times.

156.    BMT lacked legal authority to encumber the estate's interest in the Property.

157.    The Mortgage granted to R4RE, therefore, did not and could not validly attach to the estate's interest in the Property.

158.    By reason of the foregoing, the Plaintiff is entitled to a declaratory judgment against the Defendants determining that: (a) the Mortgage is void, unenforceable, or without effect as to the estate's interest in the Property at the time of the Transfer, except to the extent that the proceeds from the Mortgage was used to satisfy certain, but not all, valid existing debts of the Debtor; (b) the Mortgage does not encumber the estate's interest in the Property, except to the extent that the proceeds from the Mortgage was used to satisfy certain, but not all, valid existing debts of the Debtor; and (c) the estate's interest in the Property is free and clear of the Mortgage, except to the extent that the proceeds from the Mortgage was used to satisfy certain, but not all, valid existing debts of the Debtor.

**NINTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**
**(Preservation of Avoided Transfer Under 11 U.S.C. § 551)**

159.    The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "158" as if set forth fully herein.

160. Any transfer or lien avoided pursuant to this Complaint is automatically preserved for the benefit of the estate.

161. By reason of the foregoing, the Plaintiff is entitled to an order and judgment preserving all avoided transfers and liens for the benefit of the Debtor's estate pursuant to Section 551 of the Bankruptcy Code.

## **RESERVATION OF RIGHTS**

162. During the course of this adversary proceeding, the Plaintiff may learn (through discovery or otherwise) of additional causes of action. Accordingly, the Plaintiff reserves her right to amend this Complaint to include: (i) further information regarding the allegations herein; (ii) revisions to the Defendants' names; (iii) additional defendants; (iv) additional causes of action; and/or (v) to seek recovery of such additional transfers (the "Amendments"), that may become known to the Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to the date this Complaint was filed.

**WHEREFORE**, the Plaintiff respectfully demands: (i) judgment against the Defendants consistent with the allegations set forth in the Complaint; together with (ii) such other, further and different relief that this Court deems just, proper and equitable.

Dated: April 20, 2026
     Huntington, New York

Respectfully submitted,

**Rosen, Tsionis & Pizzo, PLLC**
*Counsel to Lori Lapin Jones,*
*Plaintiff-Chapter 7 Trustee*

By:   */s/ Alex E. Tsionis*
    Alex E. Tsionis, Esq.
    38 New Street
    Huntington, New York 11743
    (631) 423-8527
    atsionis@ajrlawny.com

23